DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Vernon Curry, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellant and his friend, James Foreman ("Foreman"), along with many others, were engaged in a money making scheme. The scheme involved the acquisition of credit card numbers from area motels, restaurants and tuxedo rental places. The parties would then take these credit card numbers and offer to purchase items or pay other people's bills. In return for purchasing the items or paying bills, the parties would receive in cash approximately half the value of the item or bill.
 {¶ 3} On May 25, 2005, Appellant was indicted on several counts, including: one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1)/(B)(2), 13 counts of receiving stolen property, in violation of R.C. 2913.51 (A), one count of aggravated theft, in violation of R.C. 2913.02(A)(3), one count of identity fraud, in violation of R.C. 2913.49(B)(2), six counts of misuse of credit cards, in violation of R.C. 2913.02(A)(3), five counts of theft, in violation of R.C. 2916.02(A)(3), and seven counts of petty theft, in violation of R.C. 2913.02(A)(3). On June 20, 2005, a supplemental indictment was filed, charging Appellant with an additional nine counts, including: three counts of receiving stolen property, two counts of petty theft, three counts of misuse of credit cards, and one count of theft. Appellant plead not guilty to all charges.
 {¶ 4} On November 4, 2005, the case proceeded to a jury trial. Appellant was jointly tried with Foreman. At the close of the State's case and at the close of all evidence, Appellant unsuccessfully moved for a Crim.R. 29(A) motion for acquittal. Appellant was convicted of one count of engaging in a pattern of corrupt activity, a felony of the first degree and 32 other theft related offenses, including multiple felony counts of theft, identity fraud, misuse of credit cards and receiving stolen property, as well as multiple misdemeanor counts of petty theft and misuse of credit cards. He was sentenced to six years incarceration for engaging in a pattern of corrupt activity, one year on each remaining felony and six months for each misdemeanor. The sentences were to ran concurrently for a total of six years incarceration. Appellant timely appeals from his conviction for engaging in a pattern of corrupt activity, raising one assignment of error for our review.
 II. ASSIGNMENT OF ERROR "APPELLANT'S CONVICTION FOR ENGAGING IN A PATTERN OF CORRUPT ACTIVITY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} In his sole assignment of error, Appellant argues that his conviction for engaging in a pattern of corrupt activity was against the manifest weight of the evidence. This Court disagrees.
 {¶ 6} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (overruled on other grounds). When a defendant asserts that his convictions are against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 7} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. Thompkins, 78 Ohio St.3d at 387 (overruled on other grounds). Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see also, Otten, 33 Ohio App.3d at 340.
 {¶ 8} Appellant was convicted of engaging in a pattern of corrupt activity act, in violation of R.C. 2923.32(A)(1)/(B)(1). This section provides that:
 "(A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."
A pattern of corrupt activity is defined in R.C. 2923.31(E) as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."
 {¶ 9} Further, enterprise "includes any individual * * * or group of persons associated in fact although not a legal entity. `Enterprise' includes illicit as well as licit enterprises." R.C. 2923.31(C).
 {¶ 10} Appellant specifically argues that the weight of the evidence shows that there was no enterprise, "but merely two friends and associates carrying on similar criminal conduct independently of each other." We do not agree. "[T]he Ohio Supreme Court described the level of association necessary to support an R.C. 2923.32(A)(1) conviction in a broad sense, indicating that the state `had to prove that each defendant was voluntarily connected to the pattern [of corrupt activity comprising the enterprise], and performed two or more acts in furtherance of it.'" State v. Siferd, 151 Ohio App.3d 103,2002-Ohio-6801, at ¶ 43, quoting State v. Schlosser (1997),79 Ohio St.3d 329, 333-334. Finally,
 "[d]irect evidence of agreement is unnecessary: `proof of such an agreement may rest upon inferences drawn from relevant and competent circumstantial evidence, ordinarily the acts and conduct of the alleged conspirators themselves.' Additionally, once the conspiracy had been established, the government need show only `slight evidence' that a particular person was a member of the conspiracy. Of course, a `party to the conspiracy need not know the identity, or even the number, of his confederates.'" Id., quoting U.S. v. Elliot (1978), 571 F.2d 880, 903.
 {¶ 11} Eighty witnesses testified for the State. Of this testimony, Appellant conceded in his brief that "five cards could be linked to having been used by both Foreman and Appellant." Further, Dennis Balogh ("Balogh"), an investigator with the Summit County Prosecutor's Office testified that there were six defendants charged with engaging in a pattern of corrupt activity. Balogh testified to the connection between Appellant and Foreman. He stated that there were five credit card numbers used by both.
 {¶ 12} Allen Grier ("Grier") testified for the State. He testified that he knew Appellant and Foreman from his neighborhood and that he had socialized with them. Grier stated that he knew Foreman and his family and regarding Appellant, "I know that's one of his partners." He further testified that he had made a statement to Balogh and Inspector Gatz ("Gatz") of the United States Postal Service regarding an incident of credit card fraud in which he was involved. He denied, however, implicating Appellant and Foreman in the credit card scheme.
 {¶ 13} Gatz testified that he interviewed Grier. He stated that during the interview, Grier told him that "Forman and [Appellant] * * * were real tight. They were very good friends[.]" Further, Gatz testified that Grier said that Appellant and Forman "had been involved in doing credit card numbers for quite a long time." Grier also told Gatz that "Foreman was more responsible for buying the merchandise and [Appellant] was more responsible for selling the merchandise."
 {¶ 14} Edna Taylor ("Taylor") testified for the State. She admitted that she would ask Foreman to pay her bills and buy her things with stolen credit card numbers. She further testified that she would pay other people's bills with the credit card numbers that Foreman furnished her. She would then split the proceeds with Foreman. Taylor testified that Appellant came to her house with Foreman. She testified that when Appellant and Foreman came to her house, "[t]hey do my bills. They take turns." She further explained that by "do my bills" she meant "Foreman would do a bill; [Appellant] would do a bill." She stated that they came to her home once a month for a total of approximately ten times. She further identified Appellant in court as the man Foreman brought to her home.
 {¶ 15} Latia Jones ("Jones") testified that she was Foreman's live-in girlfriend. She further testified that she knew Appellant and that Appellant and Foreman were friends. According to Jones, Foreman and Appellant "would come over and they would go into my dining room and talk and use the cell phones and get their credit card numbers out and do what they had to do[.]"
 {¶ 16} Theresa Morgan testified that she was involved in the money-making scheme. She further testified that on two occasions she saw Appellant at her home with Foreman. Both occurrences were when Foreman came to her home to purchase items and pay bills for her with stolen credit card numbers.
 {¶ 17} Karen Shadie ("Shadie") testified that Appellant was the father of her 11-month-old son. She stated that Appellant and Foreman were friends. She further testified that Appellant had her father's car repaired. Shadie testified that she went with Appellant to pick up her father's car, and that Appellant told her not to worry about payment because he would take care of it. According to the invoice and credit card slip that was introduced into evidence, the bill was paid with a stolen credit card number. Further, Foreman's cell phone number was listed as the contact number on the invoice. Shadie testified she told Balogh that Appellant and Foreman were frequently at her father's house and that "[t]they would be on the phone a lot[.]"
 {¶ 18} Terry Worthey testified that he talked with Foreman about paying his gas bill. He testified that he paid Foreman half the bill and a few days later, Foreman came back with Appellant and told Worthey that "they had paid the bill and it was taken care of."
 {¶ 19} Appellant argues that the jury created a manifest miscarriage of justice when it found from the evidence presented that Appellant was involved in an "enterprise." We disagree. We will not disturb the jury's determinations regarding the witnesses' credibility as "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses and find that Appellant committed the charged offenses.
 {¶ 20} The evidence showed at least five credit card numbers used by both Appellant and Foreman. Further, testimony revealed that Appellant and Foreman were friends and were often together. Finally, there was direct testimony that Appellant and Foreman worked together on several of the transactions at issue. The jury could find from these facts that Appellant was engaged in an enterprise with at least Foreman. Further, the jury could find from the testimony that this enterprise was engaged in a pattern of corrupt activity, involving at least two "incidents of corrupt activity." R.C. 2923.31(E).
 {¶ 21} Given the testimony, this is not a case where the evidence weighs heavily in favor of Appellant, meriting a new trial. Therefore, Appellant's conviction was not against the manifest weight of the evidence. Accordingly, Appellant's sole assignment of error is overruled.
 III. {¶ 22} Appellant's sole assignment of error is overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to ran. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J.
BAIRD
CONCUR}
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)