[Cite as *State v. Byrd*, 2016-Ohio-8135.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

     Appellee

     v.

JOHNNIE BYRD III

     Appellant

C.A. No.     27868


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 2013 03 0665 (A)

DECISION AND JOURNAL ENTRY

Dated: December 14, 2016

---

HENSAL, Judge.

{¶1}    Johnnie Byrd appeals a judgment of the Summit County Court of Common Pleas that convicted and sentenced him for engaging in a pattern of corrupt activity, grand theft, telecommunications fraud, illegal use of food stamps, and money laundering. For the following reasons, this Court affirms.

I.

{¶2}    In 2009, Mr. Byrd asked his girlfriend, Heather Fry, to form a corporation so that he could run a convenience store in Akron. After creating Byrd House, Inc., Ms. Fry also completed the paperwork that was required for the store to sell tobacco and alcohol and accept electronic benefits transfer (EBT) cards. Mr. Byrd could not complete the paperwork in his own name because he had a disqualifying criminal history. He was, however, named as the corporations' president and statutory agent, and he established a checking account on behalf of the corporation.

{¶3}    From 2009 to 2012, Mr. Byrd operated the convenience store.  Because of the number of EBT transactions that it had for its size, it drew the attention of law enforcement, which began investigating the store.  The investigation examined whether the store allowed customers to use EBT funds for improper items such as tobacco and alcohol.  It also examined whether the store allowed customers to convert EBT funds into cash.  After a series of controlled buys revealed that both practices were occurring in the store, the Grand Jury indicted Mr. Byrd for engaging in a pattern of corrupt activity, grand theft, telecommunications fraud, and illegal use of food stamps.  Suspecting that Mr. Byrd was using the revenue of the company to pay the mortgages of properties that his mother owned, the Grand Jury also indicted Mr. Byrd for money laundering.  A jury found him guilty of the offenses, and the trial court sentenced him to nine years in prison.  Mr. Byrd has appealed his convictions, assigning as error that they are not supported by sufficient evidence and are against the manifest weight of the evidence.  Mr. Byrd has argued his assignments of error together, and this Court will address them together.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT OVERRULED A TIMELY DEFENSE MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 AS THERE WAS NOT SUFFICIENT EVIDENCE PRESENTED BY THE STATE OF OHIO TO ESTABLISH A PRIMA FACIE CASE OF THE CRIMES CHARGED.

ASSIGNMENT OF ERROR II

THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE OF OHIO FAILED TO PROVE EACH AND EVERY ELEMENT OF THE CRIMES CHARGED BEYOND A REASONABLE DOUBT.

{¶4}    Mr. Byrd argues that the trial court should have granted his Criminal Rule 29 motion and that his convictions are against the manifest weight of the evidence.  Under Criminal

Rule 29(A), a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction * * *." Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶5} If a defendant asserts that a conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶6} Mr. Byrd argues that his illegal-use-of-food-stamps and telecommunications-fraud convictions were not supported by sufficient evidence because there was no evidence that he knew illegal transactions were occurring at the store. He notes that the two witnesses who

testified that they had used their benefits to buy impermissible items or receive cash at the store both testified that it was someone else who completed their transactions. He also notes that there was no evidence that he was at the store at the time law enforcement conducted the controlled buys. He further notes that the EBT terminals do not itemize what has been purchased, so there would be no way for him to review transactions after they had been completed and learn that fraud was occurring at the store.

{¶7} Revised Code Section 2913.46(B), concerning the illegal use of food stamps, provides that "[n]o individual shall knowingly possess, buy, sell, use, alter, accept, or transfer supplemental nutrition assistance program benefits * * * or any electronically transferred benefit in any manner not authorized * * *." Section 2913.05(A), concerning telecommunications fraud, provides that "[n]o person, having devised a scheme to defraud, shall knowingly * * * transmit, or cause to be * * * transmitted by means of a wire, * * * telecommunications device, or telecommunications service any * * * data, sign, signal, * * * or image with purpose to execute or otherwise further the scheme to defraud."

> A person acts knowingly * * * when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B). Recognizing that establishing someone's mental state is "often difficult to prove directly," the Ohio Supreme Court has held that it can "be inferred from the surrounding circumstances." *State v. Logan*, 60 Ohio St.2d 126, 131 (1979).

{¶8} Ms. Fry testified that Mr. Byrd ran the day-to-day operations at the store. The agents who investigated the store testified that it was only 820 square feet, but had EBT sales

that were characteristic of a store the size of Wal-Mart. Upon review of the record, we conclude that, although there was no direct evidence that Mr. Byrd knew illegal EBT activity was occurring within the store, in light of the magnitude of the illegal activity, his knowledge of it can be inferred from the surrounding circumstances. *Compare State v. NRAG, L.L.C.*, 12th Dist. Fayette No. CA2008-12-043, 2009-Ohio-4137, ¶ 23 (concluding that there was insufficient evidence to find that company knew of employee's illegal sales when CEO of company refused to engage in an improper transaction).

**{¶9}** Regarding his conviction for grand theft under Section 2913.02, Mr. Byrd argues that the State failed to establish beyond a reasonable doubt the amount of the EBT transactions that were improper. He notes that the State's own witnesses testified that their fraudulent transactions included authorized goods.

**{¶10}** Initially, we note that the "value of stolen property is not an essential element of the offense of theft but, rather, is a finding that enhances the penalty of the offense." *State v. Smith*, 121 Ohio St.3d 409, 2009-Ohio-787, ¶ 13. Mr. Byrd, therefore, was not entitled to a judgment of acquittal on the grand theft count even if the State could not establish the amount of the theft. Regarding the amount of the theft, the State attempted to prove it by comparing the amount of the convenience store's EBT sales to those done by stores of comparable size and location. According to agents, the five stores it examined that were similar to Mr. Byrd's store had EBT sales that normally ranged from $2,000 to $4,000 a month. Mr. Byrd's store, on the other hand, had EBT sales that sometimes exceeded $100,000 in a month. According to an accountant, between October 2009 and March 2012, Mr. Byrd's store had total sales that were just under two million dollars. Approximately 72% were EBT sales. The State, noting that the most EBT sales any of the comparable stores had during those months was about $12,000,

argued that, even if Mr. Byrd's store had $12,000 in legitimate sales each month, the illegal transactions would still total over $750,000. The State's calculation is accurate. Upon review of the record, we conclude that, viewing the evidence in a light most favorable to the State, the jury's finding that Mr. Byrd stole between $750,000 and $1,500,000 is supported by sufficient evidence.

{¶11} Regarding his conviction for money laundering, Mr. Byrd argues that he could not have used any of the money he withdrew from the convenience store's bank account to purchase rental property for his mother because the evidence established that she purchased all of the properties before he began running the store. The State's argument at trial, however, was not that he used illegally-obtained funds to purchase properties for his mother, but that he used the funds to help pay off the mortgages on some of those properties.

{¶12} The jury found Mr. Byrd guilty of violating Section 1315.55(A)(1) or (3). Section 1315.55(A)(1) provides that "[n]o person shall conduct or attempt to conduct a transaction knowing that the property involved in the transaction is the proceeds of some form of unlawful activity with the purpose of committing or furthering the commission of corrupt activity." Section 1315.55(A)(3) provides that "[n]o person shall conduct or attempt to conduct a transaction with the purpose to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of corrupt activity." According to Mr. Byrd's mother, although she was the one who obtained the mortgages on her rental properties, Mr. Byrd made the payments. According to the accountant, Mr. Byrd withdrew over $900,000 from the convenience store's bank account and made over $69,000 in payments on the mortgages during the time that the convenience store was operating. Although there was no direct evidence that Mr. Byrd used the money he withdrew from the convenience store's account to make those

mortgage payments, viewing the evidence in a light most favorable to the State, we conclude that there was circumstantial evidence that he used illegally obtained EBT funds to pay off the mortgages.

{¶13} Finally, regarding his conviction for engaging in a pattern of corrupt activity, Mr. Byrd argues that, if his other convictions fail, this conviction must also be reversed. Because his other offenses are supported by sufficient evidence, however, we conclude that the trial court did not err when it overruled his Criminal Rule 29(A) motion with respect to the engaging-in-a-patter-of-corrupt-activity offense.

{¶14} Regarding whether Mr. Byrd's convictions were against the manifest weight of the evidence, Mr. Byrd argues that, even if there was sufficient evidence to warrant the charges going to the jury, no reasonable trier of fact could have found him guilty beyond a reasonable doubt. The Ohio Supreme Court has recognized that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. This Court has also recognized that "[t]he trier of fact is in the best position to judge the credibility of the witnesses[.]" *State v. Curry*, 9th Dist. Summit No. 23104, 2007-Ohio-238, ¶ 19. Upon careful review of the record, we conclude that this is not the exceptional case in which the jury lost its way when it found Mr. Byrd guilty of the offenses. Mr. Byrd's assignments of error are overruled.

III.

{¶15} Mr. Byrd's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

WHITMORE, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.