[Cite as *State v. Davis*, 2023-Ohio-1657.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.     30231 |
|     Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ROBERT DAVIS | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
|     Appellant | | CASE No.     CR 2012-01-0289-B |

DECISION AND JOURNAL ENTRY

Dated: May 17, 2023

STEVENSON, Judge.

{¶1} Defendant-Appellant Robert Davis ("Davis") appeals the ruling of the Summit County Common Pleas Court denying his motion for a new trial. For the following reasons, this Court affirms.

I.

{¶2} The following summary of the factual and procedural background was derived in large part from the original appellate decision upholding Davis' convictions, *State v. Davis*, 9th Dist. Summit No. 26660, 2013-Ohio-5226.

{¶3} On January 10, 2012, Davis, DeMarcus Williams ("Williams"), and Rasheem Carr ("Carr"), also known as "Mal," decided to rob Marcus Minter ("Minter") because Williams knew Minter always had money on him. According to Williams, the plan was that he and Carr would rob Minter, and then Davis would drive them to Williams' aunt's ("Aunt's") house. Also, Carr was

supposed to park his mother's Buick Rendezvous in an alley behind Davis' house and give Davis the keys.

{¶4} Down the street from Davis' house, Minter was sitting in Philip Anderson's ("Anderson") car with Alexander Wells ("Wells"). Williams and Carr approached the car with their guns drawn. According to Williams, as he was robbing Minter, Carr fatally shot Anderson. Williams and Minter ran. Davis was waiting for Williams in the Buick Rendezvous and drove him to Aunt's house. Davis then went back and picked up Carr. When they returned to Aunt's house, the three of them divided up the proceeds from the robbery.

{¶5} Williams initially refused to talk when questioned by the police, denying that he had any knowledge or involvement in the incident. The second time Williams spoke with the police, he told them that he and Davis robbed Minter, but Davis was the one who shot Anderson. He implicated Carr as the getaway driver.

{¶6} A short time later, while Williams was still being held in jail, his girlfriend called the Akron Police Department, stating that Williams urgently wished to speak with a detective on his case. Sgt. Dave Garro then met with Williams at the Summit County Jail. Williams told Sgt. Garro that in his prior interview he lied about Davis being the shooter, and that in fact, Carr was the shooter and Davis simply drove the getaway car. Williams said that he previously implicated Davis as the shooter because at the time, he erroneously believed Davis had turned him in. Once Williams realized that Davis' statement to the police had not implicated him, he wished to correct his statement.

{¶7} Williams entered into an agreement to plead guilty to the lesser charges of involuntary manslaughter and aggravated robbery, both with firearm specifications, in exchange for his truthful testimony against Carr and Davis. Williams, Carr, and Davis were indicted. Davis

was charged with (1) felony murder, in violation of R.C. 2903.02(B), an unclassified felony; (2) aggravated robbery, in violation of R.C. 2911.01(A)(3), a felony of the first degree: and (3) having weapons while under disability, in violation of R.C. 2923.13, a felony of the third degree. Additionally, the charges of felony murder and aggravated robbery had firearm specifications. Williams pleaded guilty, and Carr and Davis were tried together.

{¶8} A jury found Davis not guilty of having weapons while under disability and the firearm specifications, but guilty of felony murder and aggravated robbery. He was acquitted of the other charges, including all firearm specifications. The court merged the two offenses and sentenced Davis to 15 years to life in prison.

{¶9} Williams testified during the trial, and in accordance with his plea bargain, received the benefit of reduced charges. After the trial, Williams was sentenced to ten years in prison. Davis' and Carr's convictions were upheld on appeal. *Davis*, 2013-Ohio-5226; *State v. Carr*, 9th Dist. Summit No. 26661, 2014-Ohio-806.

{¶10} In January 2019, Davis sought leave of court to file a delayed motion for a new trial pursuant to Crim.R. 33(B). The trial court granted the motion, and Davis timely filed a motion and amended motion for a new trial under Crim.R. 33(A)(6) (newly discovered evidence). The motion alleged that since the trial, Williams repeatedly wrote to Davis and the Ohio Innocence Project ("OIP") stating that he wanted to help exonerate Davis. The motion included Williams' signed affidavit, which stated in pertinent part with original spelling and grammar:

> [I] did not testify truthfully at Robert's trail when I stated that he was involved in the robbery. In fact I asked him if he wanted to go with me to rob Minter. He said I'm kool or something like that. It was obvious to me that he wanted no parts of the robbery. He said something about being kool with Minter or his people. I had previously told the procutor this. I had met with the prosecution so many times that they made me believe he was a part of the crime when he wasn't.

{¶11}  The trial court held an evidentiary hearing on the motion for new trial in January 2020.  Williams and former Assistant Summit County Prosecutor Michael Cody testified.  At the time of the hearing, Williams was still in custody, serving his prison sentence, his release date approaching.

{¶12}  Upon direct examination, Williams stated that his testimony at trial was not truthful, and that Davis was not in any way involved in the robbery.  Williams testified that he and Carr planned and committed the robbery, that Carr shot Anderson, and Carr drove them both away from the scene.  This testimony completely contradicted Williams' trial testimony.

{¶13}  In support of Williams' recantation testimony, Davis introduced six letters that Williams admitted sending to Davis while they were both in prison, characterizing them as evidence of Williams' desire to change his testimony and exculpate Davis of any wrongdoing. Davis also introduced into evidence Williams' affidavit.

{¶14}  During the time of his correspondence with Davis, Williams was also writing back and forth with the OIP about helping Davis. Those letters were also presented at the hearing.  While at times in those letters Williams expressed willingness to help, he made it clear that his willingness was contingent upon whether his cooperation would reverse his plea deal. After the OIP's letter to Williams on July 27, 2017, no further correspondence transpired. At the conclusion of Williams' testimony, the Court questioned him in a very protracted exchange. The parties submitted their final arguments by brief.

{¶15}  The trial court denied Davis' motion for a new trial.  In its ruling, the court concluded that Williams' recantation was not credible, and even if it were, was merely impeaching of and cumulative of his trial testimony, and thus, were it to be admitted at a new trial, would not materially affect the outcome.

{¶16} David timely appealed and raises six assignments of error for our review. Davis asks this Court to reverse the ruling of the trial court and remand the matter for a new trial. For the following reasons, this Court affirms.

II.

## ASSIGNMENT OF ERROR I

### THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT A NEW TRIAL

{¶17} In his first assignment of error, Davis makes the following arguments: 1) this Court should apply a de novo standard of review because the trial court applied an incorrect standard of law; 2) *State v. Petro*, 148 Ohio St. 505 (1947), not *State v. Brown,*186 Ohio App. 3d, 309, 2010-Ohio-405*,* nor *State v. Calhoun,* 86 Ohio St. 3d 279 (1999)*,* governs the trial court's exercise of discretion in determining whether to grant a new trial subsequent to a hearing on the motion; 3) *Calhoun* provides the factors that determine whether to grant a hearing on the motion for new trial; and 4) Davis met his burden under *Petro* and is entitled to a new trial.

{¶18} For the following reasons, this Court disagrees and overrules Davis' first assignment of error.

*Abuse of Discretion Is The Appropriate Standard of Review.*

{¶19} This Court has consistently held that an appellate court reviews a trial court's ruling on a motion for new trial under an abuse of discretion standard. *State v. Roper*, 9th Dist. Summit No. 29466, 2021-Ohio-188, ¶ 8, citing *State v. Pyle*, 9th Dist. Summit No. 28802, 2018-Ohio-3160, ¶ 47. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "When applying an abuse of discretion standard, a

reviewing court is precluded from simply substituting its own judgment for that of the trial court." *Roper* at ¶ 8, citing *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1983).

{¶20} A trial court's application of an incorrect standard of law constitutes an abuse of discretion. *State ex rel. Perry v. Indus. Comm.*, 10th Dist. Franklin No. 06AP-312, 2007-Ohio-4687, ¶ 17-18 (internal citations omitted); *Lance v. Boldman,* 9th Dist. Wayne No. 16AP0032, 2018-Ohio-44, ¶ 12, quoting *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 21 ("'A trial court will be found to have abused its discretion when its decision is *contrary to law,* unreasonable, not supported by evidence, or grossly unsound.'"). Thus, Davis' claim that the trial court applied an incorrect standard of law may be reviewed for an abuse of discretion, and his assertion that a de novo standard of review should be applied is not well-taken.

### *Hearing On Motion For New Trial Does Not Establish Credibility of Affidavit*

{¶21} Davis contends that the trial court's February 18, 2020, order granting a hearing on his motion for new trial necessarily means the trial court weighed the *Calhoun* factors and established the credibility of Williams' affidavit prior to the hearing, and therefore, should have likewise granted Davis' motion for new trial when it applied *Calhoun* subsequent to the hearing. Davis is essentially arguing that the trial court weighed the same set of facts both before and after the hearing under the lens of *Calhoun*, yet arrived at two different results. We disagree.

{¶22} *Calhoun* involved a petition for postconviction relief filed pursuant to R.C. 2953.21. After reviewing the documents submitted in support of the petition, the trial court found the petition to be without merit and denied it without a hearing. *Calhoun* at 280. The Ohio Supreme Court held that the trial court properly denied the defendant's petition without holding an evidentiary hearing where the petition, the supporting affidavits, documentary evidence, files and records did not demonstrate the petitioner set forth sufficient operative facts to establish

substantive grounds for relief. *Id*. at paragraph two of the syllabus. "The trial court may, under appropriate circumstances * * * deem affidavit testimony to lack credibility without first observing or examining the affiant." *Id.* at 284.

**{¶23}** Thus, *Calhoun* holds that a trial court may *deny* relief without a hearing, not as Davis contends, that the granting of a hearing necessarily established the credibility of an affidavit. *Calhoun* only addressed the questions of whether a trial court must accept the affidavits presented as true, and whether the trial court erred in dismissing the petition without holding an evidentiary hearing. Both of those questions were answered in the negative. *Id*. at 281. Therefore, Davis' contention that the granting of a hearing on a motion for a new trial establishes the credibility of the evidence attached to that motion is not supported by *Calhoun.*

**{¶24}** Moreover, Davis' claim is contradicted by the language of the trial court's February 18, 2020 order setting the hearing on his motion for new trial, which stated, "[O]n February 11, 2020, upon due consideration of this Court, IT IS HEREBY ORDERED that a hearing in this case be set for March 25, 2020, at 2:00 P.M." No reasonable reading of the order supports the assertion that the trial court found Williams credible at that stage.

**{¶25}** Furthermore, as explained below, under Crim. R. 33 (New Trial) the trial court was not tasked with conducting a credibility analysis prior to the hearing on the motion for new trial.

### *New Trial Procedure Under Crim R. 33*

**{¶26}** Crim.R. 33(A)(6) permits a defendant to move for a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at trial." A motion for a new trial that alleges newly discovered evidence must be filed within 120 days of the verdict. Crim.R. 33(B).

**{¶27}** Because Davis' motion for new trial was filed well outside the 120-day period, he was required to obtain leave of court to file an untimely motion for new trial as further set forth in Crim.R. 33(B):

> Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. *If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.*

(Emphasis added.) Crim.R. 33(B).

**{¶28}** Thus, as this Court has explained, "'a two-step process is anticipated when [a motion for a new trial] is made outside the period during which motions for a new trial are permitted as a matter of course[]' and has recognized that '[t]here will be an initial step that results in the issuance of an order from the court that there was an unavoidable delay.'" *State v. Grad*, 9th Dist. Medina No. 22CA0011-M, 2022-Ohio-4221, ¶ 7, citing *State v. Georgekopoulos*, 9th Dist. Summit No. 21952, 2004-Ohio-5197, ¶ 7, quoting *State v. Dawson*, 9th Dist. Summit No. 19179, 1999 WL 492600, *2 (July 14, 1999).

**{¶29}** Wherefore, the *singular* threshold consideration in determining whether leave to file a motion for new trial outside of the 120 days permitted by rule should be granted is whether there was clear and convincing evidence that the movant "was unavoidably prevented from discovering the evidence within the time prescribed * * * ." Crim.R. 33(B). There is nothing in the language of Crim.R. 33(B) that mentions evaluation of the credibility of affidavits or other new evidence, or whether that new evidence, in this case the key prosecution witness's recantation, is dispositive and justifies a new trial. The determination of the credibility of affidavits is made later, at the hearing on the motion if a hearing is granted. Crim.R. 33(A)(6) ("the defendant must produce

at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom [newly discovered evidence] is expected to be given * * *").

{¶30} The trial court recognized in its February 11, 2022, ruling that it granted the motion for leave based on Davis' assertion that he was "unavoidably prevented" from discovering that Williams lied under oath within 120 days after the verdict was rendered. As previously noted, the trial court's February 18, 2020, order setting the hearing on the motion for new trial established nothing more than a hearing date. Under Crim.R. 33(B), the trial court was not called upon to assess the credibility of Williams' affidavit in deciding whether to grant leave or whether to hold a hearing on the motion for new trial. Accordingly, neither of those orders can be interpreted as a judgment on Williams' credibility.

*Brown Test Is the Standard For Reviewing Recantation*

{¶31} In its ruling denying Davis' motion for new trial, the trial court cited *Brown* as the standard for determining whether a witness's recantation constitutes newly discovered evidence, and *Calhoun* for the factors to determine the credibility of an affidavit. Davis argues that the trial court erred in applying *Brown* and *Calhoun*, and instead, should have applied *Petro*. Again, Davis' argument lacks merit.

{¶32} Davis is correct that the requisites for granting a new trial based upon newly discovered evidence are set forth in *Petro* at syllabus, which provides:

> To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

{¶33} *Petro* approved and followed *State v. Lopa,* 96 Ohio St.410 (1917) (a new trial should be refused unless the trial court finds there is a strong probability that the newly discovered evidence will result in a different verdict and is not just cumulative or impeaching in character). *Petro* at syllabus.

{¶34} In determining whether recanted testimony qualifies as newly discovered evidence, this Court has consistently applied the well-settled test set forth in *Brown* at ¶ 20, which provides:

> If the newly discovered evidence is a recantation by a main prosecution witness, the trial court must determine which of the contradicting testimonies of the recanting witness is credible. The trial court must make two determinations: (1) which of the contradictory testimony offered by the recanting witness is credible and true, and if the recanted testimony is to be believed; (2) would the evidence materially affect the outcome of the trial.

(Internal quotation marks and citations omitted.) *See e.g. State v. Velez*, 9th Dist. Summit No. 09CA009564, 2010-Ohio-312; *State v. Covender*, 9th Dist. Lorain No. 11CA010093, 2012-Ohio-6105, ¶ 7; *State v. Elkins*, 9th Dist. Summit No. 21380, 2003 WL 22015409, *3 (Aug. 27, 2003).

{¶35} Our review of *Brown* and the cases it relies on revealed that the *Brown* court applied *Petro* to recanted witness testimony. The test from *Brown* was based on an earlier decision, *Toledo v. Easterling*, 26 Ohio App.3d 59 (6th Dist.1985). In *Easterling*, the trial court was similarly faced with the alleged recantation of trial testimony by the victim and sole prosecution witness to the crime. *Easterling* at 61. *Easterling* cited *Petro* for the fundamental six-part test to determine whether a new trial is warranted based on newly discovered evidence. *Id*.

{¶36} Wherefore, the two-part test in *Brown* is not a deviation from established law nor is the connection between *Petro* and *Brown* a quantum leap. As explained in *Easterling*, the answer to the two-part test in *Brown* connects directly to the first *Petro* factor ("discloses a strong probability that it will change the result if a new trial is granted"). Thus, the *Brown* test rose from cases construing *Petro*. Accordingly, the trial court followed well-settled law in applying *Brown*.

*The Trial Court Applied Petro*

{¶37} Davis apparently failed to recognize the trial court's reference to *Petro*. The trial court specifically wrote in its order denying Davis' motion for new trial that it found Williams' affidavit " * * * not credible, thus if admitted at a new trial, *would not materially affect the outcome. Thus, following Petro and its successors*, the evidence presented does not support a new trial for [Davis]" (Emphasis added). Clearly, by its own statement, the trial court followed *Petro*, even referencing specifically the first *Petro* factor ("strong probability that it will change the result if a new trial is granted"). Moreover, the trial court addressed other *Petro* factors without specifically listing them.

{¶38} The fifth and sixth *Petro* factors were also specifically addressed in the trial court's ruling:

> The evidence presented at this hearing is that of Williams *impeaching or contradicting* his own testimony at trial. As Williams admitted at trial to making three different statements to the police regarding the incident and was thoroughly cross-examined as to his credibility, this additional new statement actually is not 'newly discovered evidence'. Nor is it evidence that [Davis] was prevented from discovering in order to file a more timely *Motion for New Trial*.
>
> * * *
>
> Even if this Court were to find Williams' latest version of events credible, *his newest recantation is merely impeaching of and, at the same time, cumulative to his trial testimony.*

(Emphasis added.) *State v. Davis*, Summit Cty. C.P. No. CR 2012-01-0289B, 32-33 (Feb. 1, 2022), Journal Entry.

{¶39} Based on the foregoing excerpts from the trial court's ruling, Davis' claim that the trial court did not apply *Petro* is incorrect. The trial court addressed the first, fifth, and sixth *Petro* factors. Davis simply disagrees with the trial court's decision that Williams' recantation is not credible.

{¶40} The trial court rejected Williams' recantation under the first, fifth, and sixth *Petro* factors through its *Brown* analysis. *Petro* is a conjunctive test. Therefore, Davis' argument fails under *Petro*.

*Calhoun Factors May Be Applied To Affidavits In Support Of Motions For New Trial*

{¶41} The trial court recited *Calhoun* as relevant but not dispositive in determining the credibility of Williams' affidavit and recantation testimony. Davis argues that while other appellate districts have applied *Calhoun* in assessing witness recantation testimony, this Court has not adopted *Calhoun* in that context, and therefore, it was error for the trial court to rely on it. As previously noted, Davis incorrectly believed that *Calhoun* is confined to an analysis of pre-hearing credibility and is not appropriately applied subsequent to a hearing. We disagree.

{¶42} According to *Calhoun* at 285, the factors for determining credibility are not individually dispositive, and include, but are not limited to:

> (1) whether the judge reviewing the [motion for new trial] presided over the original trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

{¶43} The *Calhoun* court further noted that "a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." *Id.* "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court." *Id.*

{¶44} Although *Calhoun* was decided in the context of postconviction relief, it has been applied in cases like this one where an affidavit was attached to a motion for a new trial. *State v.*

*Lee*, 10th Dist. Franklin No. 05AP-229, 2005-Ohio-6374, ¶ 14, applying *State v. Coleman*, 2d Dist. Clark No. 04CA43, 2005-Ohio-3874, ¶ 25 (holding that *Calhoun*'s analysis of affidavits supporting petitions for postconviction relief "comfortably applies to affidavits submitted in support of a motion for a new trial"). Furthermore, other appellate districts have expressly relied on the *Calhoun* factors to discredit a witness' hearing testimony recanting the witness' trial testimony. *See e.g. State v. T.S.*, 10th Dist. Franklin No. 20AP-159, 2021-Ohio-2203, ¶ 36-37; *State v. Watson,* 12th Dist. Butler No. CA2016- 08-159, 2017-Ohio-1403, ¶ 28 (noting that *Calhoun* stated a nonexclusive list of credibility factors).

**{¶45}** Moreover, as the *Calhoun* factors are not intended to be exhaustive or exclusive, and because a credibility assessment is a matter of the trial court's discretion, it was not error for the trial court to apply *Calhoun* as a tool to determine Williams' credibility.

**{¶46}** Based on the foregoing, Davis' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**WHERE THE TRIAL JUDGE DETERMINES THE RECANTING WITNESS IS NOT CREDIBLE, A NEW TRIAL MUST BE GRANTED WHERE THERE IS NO INDEPENDENT EVIDENCE OF APPELLANT'S GUILT.**

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT'S CREDIBILITY ASSES[S]MENT IS SO ARBITRARY THAT IT CONSTITUTES AN[] ABUSE OF DISCRETION.**

## ASSIGNMENT OF ERROR IV

**IT IS SO UNCONSCIONABLE TO SUPPORT A CONVICTION WITH [] SOLELY THE TESTIMONY OF A WITNESS THE STATE AND COURT FIND TO LACK CREDIBILITY, THAT IT IS AN ABUSE OF DISCRETION.**

**ASSIGNMENT OF ERROR V**

**THE TRIAL COURT'S JUDGMENT IS ARBITRARY WHERE A PRIOR APPROPRIATE APPLICATION OF CALHOUN'S FACTORS TO THE SAME CLAIMS PRODUCED A DIFFERENT RESULT.**

**ASSIGNMENT OF ERROR VI**

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT MADE AN UNREASONABLE DETERMINATION OF FACT NOT SUPPORTED BY THE RECORD.**

**{¶47}** For ease of analysis, we address Davis' second, third, fourth, fifth, and sixth assignments of error in a consolidated fashion because they each address alleged errors in the trial court's credibility analysis. The summary of Davis' arguments is that the trial court erred in finding that Williams' recantation was not credible. We disagree.

**{¶48}** As an initial matter, we note that the Ohio Supreme Court has said "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. This is because "[t]he trier of fact is in the best position to judge the credibility of the witnesses." *State v. Curry*, 9th Dist. Summit No. 23104, 2007-Ohio-238, ¶ 19.

**{¶49}** In addition, it is important to bear in mind the fundamental principle that "[n]ewly discovered evidence that recants testimony given at trial is 'looked upon with utmost suspicion.'" *Covender*, 2008-Ohio-1453, at ¶ 11, citing *State v. Perez,* 9th Dist. Medina No. 3045-M, *3, 2000 WL 1420341, (Sept. 27, 2000). Merely because an important witness recants, the defendant is not *per se* entitled to a new trial as a matter of law. *Id.* at ¶ 12. "Recanting affidavits and witnesses are viewed with extreme suspicion because the witness, by making contradictory statements, either lied at trial, or in the current testimony, or both times." *State v. Gray*, 8th Dist. Cuyahoga No.

92646, 2010-Ohio-11, ¶ 29, citing *State v. Jones*, 10th Dist. Franklin No. 06AP-62, 2006-Ohio-5953, ¶ 25.

**{¶50}** Referencing the first *Calhoun* factor, the trial court noted preliminarily that the judge that reviewed the motion for new trial also presided over the entirety of the original trial. Thus, the trial judge was familiar with the underlying proceedings and was in the best position to observe Williams and assess the credibility of his recantation.

**{¶51}** The trial court listed all the components it considered in arriving at its decision: specifically, that it reviewed Davis' motion for new trial, the State's response, Williams' testimony at the hearing, the exhibits (letters, Williams' affidavit), the testimony from the original trial, and the post-hearing briefs submitted by the parties. Particularly noteworthy is that the trial court questioned Williams at length to understand the "logical inconsistencies in the new version" and "what Williams was now saying happened." Thus, the trial court took comprehensive measures to thoroughly understand the differences between Williams' testimony at trial and his recantation to "determine which of the contradicting testimonies of the recanting witness is credible" as required under *Brown. Brown* at 318.

**{¶52}** The trial court addressed Williams' prior testimony at the original trial, noting that Williams was subjected to "intense cross-examination about his credibility by attorneys for Carr and Davis, and that they each went over his prior numerous statements in detail. * * * All of Williams' vacillations were discussed and explored before the jury * * *." The trial court further noted that the jury also found Williams' testimony at the original trial to be credible, even after hearing multiple prior statements.

**{¶53}** The trial court rejected Davis' assertion that it was Williams' own guilt and moral code which compelled him to come forward. The court was particularly persuaded by the fact that

Williams did not initiate contact with Davis, but rather, Davis first wrote to Williams, and none of those letters from Davis were introduced. From that, the trial court concluded that Davis reaching out for Williams' help "does lessen the strength of the presentation of Williams' 'recantation' as being something Williams initiated or decided to do on his own out of a genuine belief regarding Davis' innocence."

{¶54} The trial court summarized its impression of all the letters from Williams to Davis as "Williams never stopped expressing hesitation about changing his statement, apparently out of concern for himself and the possibility he could do more prison time as a result", rather than as Williams expressing a genuine change of heart.

{¶55} The trial court further concluded that Williams did not appreciate that Ohio law allows for an accomplice to be convicted of the foreseeable outcome of a decision to rob someone at gunpoint, noting specifically that Williams did not seem to understand that Davis' peripheral involvement of planning or participating in the robbery would make him equally responsible with Carr and Williams for Anderson's death. In arriving at that conclusion, the trial court highlighted Williams' statement in his first letter about "Mal" not owning up to being solely responsible for something he, Williams, and Davis planned together ("Mal didn't keep it real! Cuz if he would've then the whole situation would be different. He was supposed to stand up and take ownership for what he did, but instead he wanted 2 n * * *s to take the fall for some shit he did"). The trial court also questioned why Williams pleaded guilty to involuntary manslaughter, a charge he was at risk of being found guilty at trial, even though he did not pull the trigger. The trial court's impression of Williams' misunderstanding about complicity was further solidified when it asked Williams at the hearing "[w]ere you aware of the laws of complicity [at the time of the original trial]? Williams responded, "No, ma'am."

**{¶56}** Davis also complained that the trial court "largely" based its assessment of Williams' credibility on the fact that the jury found Williams' trial testimony credible. However, the trial court stated,"[t]he jury found that testimony to be credible *as well*," (emphasis added), meaning in addition to the other things the court took into consideration, not "largely."

**{¶57}** The trial court addressed Davis' claim that the prosecution coerced or misled Williams into making multiple statements and rejected it. The trial court noted that in his affidavit, Williams claimed that "I had met with the prosecution so many times that they made me believe he [Davis] was a part of the crime when he wasn't." However, former prosecutor Michael Cody testified at the hearing that the prosecution only met *twice* with Williams, the first time in April 2012 to discuss a plea deal, and again in July or August to prepare for trial. Moreover, as the trial court indicated, "the recordings of Williams' statements to the prosecutor and police show no coercion whatsoever and appear to be voluntarily made by Williams."

**{¶58}** Last, the trial court stressed that Williams' affidavit was not executed until September 20, 2018, more than three years after Davis first approached Williams for help, concluding that the "time lapse alone causes one to question Williams' sincerity in wishing to help his friend."

**{¶59}** Accordingly, upon review of the record, this Court cannot conclude that the trial court's ruling was "arbitrary, unconscionable, and unreasonable." *Blakemore*, 5 Ohio St.3d at 219. The trial court applied the proper legal standards and engaged in a sound reasoning process. As the independent trier of fact, the trial court was in a superior position to evaluate the totality of the facts and circumstances, *Curry,* 2007-Ohio-238 at ¶ 19, and we can find no reason to disturb that finding.

**{¶60}** We conclude that the trial court did not abuse its discretion when it determined that Williams' recantation was not credible and that his motion for new trial should be denied. Davis' second, third, fourth, fifth, and sixth assignments of error are overruled.

III.

**{¶61}** The judgment of the Summit County Court of Common Pleas denying Davis a new trial is affirmed.

Judgment Affirmed

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

KIMBERLY KENDALL CORRAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.